## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## PIKEVILLE

**CIVIL ACTION NO. 05-144-DLB**

**MARY L. MINIX**                                                     **PLAINTIFF**


**vs.**                       **MEMORANDUM OPINION & ORDER**


**JO ANNE B. BARNHART, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                      **DEFENDANT**

****************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Mary L. Minix filed her current application for supplemental security income (SSI) benefits on September 3, 2002.[1] Her application was denied initially and upon reconsideration.  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on April 6, 2004, in Prestonsburg, Kentucky.  On September 17, 2004, ALJ James S. Quinlivan issued an unfavorable decision, finding that Plaintiff was not disabled.

---

[1]Plaintiff filed four prior applications.  Her first application, dated September 1, 1983, was denied initially, and no further action was taken.  Her second application, dated June 19, 1997, was denied initially and upon reconsideration; and no appeal was taken.  Plaintiff's third application, dated February 16, 1999, was denied initially, and no further action was taken.  Finally, on August 2, 2000, Plaintiff filed a fourth application for SSI benefits.  That claim was denied initially and upon reconsideration, and following a hearing, ALJ Charlie Andrus issued a denial decision.  No further action was taken on that claim.  (Tr. 17).

The Appeals Council denied Plaintiff's request for further review by letter dated March 9, 2005.  The ALJ's decision, therefore, stands as the final decision of the Commissioner on Plaintiff's claim.

Plaintiff, who was 43 years old at the time of the hearing, completed a seventh grade education and obtained her GED, and alleges an inability to work beginning on December 31, 2000, due to pain in her neck, right shoulder, lower back, hips, and hands, and "nerves."  At the hearing before the ALJ, Plaintiff also indicated that she cannot lift five pounds; can only stand and walk for less than one hour, and can sit for three to four hours.

Having exhausted her administrative remedies, Plaintiff filed the instant suit on May 6, 2005.  The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II.  DISCUSSION

### A.      Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

2

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any relevant time.  (Tr. 18).  At Steps 2 and 3, the ALJ found that Plaintiff's carpal tunnel syndrome (right greater than left), degenerative disc disease (DDD) of the lumbar spine, DDD of the cervical spine with chronic neck/shoulder pain, smoker's shortness of breath, diminished vision without glasses, dysthymia and anxiety (not otherwise specified) constitute severe impairments.  (Tr. 19).  The ALJ also found, however, that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 20-21).  At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform a significant range of light work.  Specifically, the ALJ found that Plaintiff can:

> lift and carry 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk (be on her feet) at least four to six hours total during an eight-hour workday, 30 minutes at a time.  She can sit at least five to six hours total during an eight-hour workday, 30 minutes at a time.  She can occasionally use her extremities for pushing and/or pulling.  She can perform

3

no sustained, frequent overhead work.  She is unable to perform a job requiring the use of hand-held vibrating-type power tools.  She is unable to climb hills/slopes or work on uneven terrain.  She is unable to climb high ladders or work at unprotected heights.  She can only occasionally climb stairs, ramps, or steps.  She can only occasionally bend/stoop, crouch/squat, kneel or crawl.  She is unable to work in the vicinity of heavy moving machinery or otherwise be exposed to jarring, jostling or jolting.  She can perform no extensive writing or operation of computers/keyboards.  She is unable to perform activities involving forceful "pincher" type gripping maneuvers.  She must avoid exposure to excessive air pollutants, pulmonary irritants or allergens.  She is unable to work in damp-humid conditions.  She can occasionally perform activities involving fine fingering.  She must be permitted to wear corrective eyeglasses as desired.  She has good ability to understand and follow simple instructions and relate to others such as fellow workers and supervisors.  Also, she has fair ability to adapt or respond to the stress and pressures normally found in a day-to-day work setting and to sustain attention with repetitive tasks.

(Tr. 24).

Based upon these findings, the ALJ concluded that Plaintiff is unable to perform her past relevant work as a factory worker, janitor, housekeeper, or fast food worker.  (Tr. 24). At Step 5, however, the ALJ found that there are a significant number jobs Plaintiff can perform despite her limitations, including watch guard, general office clerk, product inspector (light and sedentary), surveillance monitor, and package machine tender.  (Tr. 25).  This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

## C.    Analysis

In this appeal, Plaintiff's primary argument is that the ALJ erred in failing to find her disabled under the "grid."   Subsumed within that argument are several sub-arguments, including: 1) the ALJ erred in concluding that Plaintiff was not totally credible and that she retains the residual functional capacity to perform light work, 2) Plaintiff suffers from numerous physical and mental limitations, which when considered in combination, prevent her from performing any work, and 3) the ALJ failed to give controlling weight to the opinions of Plaintiff's treating physicians.[2]

In her motion, Plaintiff states in a rather conclusory fashion that the ALJ erred by failing to conclude that she was disabled under 20 C.F.R. Part 404, Subpart P, Appendix 2 (the Medical-Vocational Guidelines, or the "grid").   (Doc. #4).   As noted by the Commissioner, Plaintiff fails to point to a particular Rule, under which she would be

---

[2]Plaintiff also argues that "[i]f the [Social Security] Administration physicians would have had the ability to see and examine [her] after having access to new MRI films, x-rays and nerve studies[,] then without a doubt, their findings would have been different and even more favorable to [her]." (Doc. #4).  The evidence Plaintiff is referring to consists of MRI scans of her cervical and lumbar spines taken after she was involved in two different motor vehicle accidents by Dr. Joseph Skeens, and dated September 20, 2004 (three days after the ALJ issued his decision).  Plaintiff submitted this evidence to the Appeals Council, (Tr. 8), but makes no further argument in her motion for summary judgment.

The Sixth Circuit has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  "Where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify or reverse the ALJ's decision." *Cline v. Comm'r of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996).  "The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id.*  The burden of showing that a remand is appropriate is on the claimant. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986).  Plaintiff has failed to sustain her burden.  Therefore, the Court concludes that remand for consideration of new and material evidence is not required.

considered disabled.  The Commissioner also argues that, in order for Plaintiff to be found disabled under the grid, she would have to be capable of performing only sedentary work, be illiterate or unable to communicate in English, and have a past relevant work history of only unskilled work or no work.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.17.  According to the Commissioner, the record is devoid of such evidence and Plaintiff has failed to present any evidence in support of her claim.

Normally, the Commissioner can meet her burden at Step 5 of the sequential evaluation by referring to the Guidelines, which dictate a finding of "disabled" or "not disabled" based upon the claimant's age, education, past relevant work experience, and RFC.  *Thomas v. Comm'r of Social Security*, 230 F.3d 1360, at *4 (6th Cir. 2000) (Table decision, text available on Westlaw) citing *Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990).  But if a claimant has both exertional and non-exertional impairments, the Commissioner is not permitted to rely solely on the Guidelines to determine whether a disability exists.  *See id.* at 1173-74; 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e).  If a claimant's non-exertional limitations prevent her from performing the full range of work at the designated level, then the Commissioner must come forward with some reliable evidence showing that there are a significant number of jobs that the claimant can perform, despite her exertional and non-exertional limitations.  *See Shelman v. Heckler*, 821 F.2d 316, 321-22 (6th Cir. 1987).  The Commissioner may meet her burden in this respect by relying on the testimony of a vocational expert.  *See Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 282 (6th Cir.1985).

6

The ALJ discussed the same in this written decision, noting that:

The first part of the final step of the sequential evaluation process requires a determination whether the grid rules direct a finding of disability based solely on exertional and vocational criteria.  The claimant's age, education, and vocationally relevant past work experience, if any, must be viewed in conjunction with the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations, which contain a series of rules that may direct a conclusion of either "disabled" or "not disabled" depending on the claimant's residual functional capacity and vocational profile.

(Tr. 24).  The ALJ also explained that "[t]he Medical-Vocational Guidelines are used as a framework ... when the claimant cannot perform all of the exertional demands of work at a given level of exertion and/or has any nonexertional limitations."  (Tr. 25).  *See Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990) (explaining that because the Guidelines take into account only exertional limitations, they generally are considered to have limited application where a claimant is limited by significant non-exertional impairments, which include mental, manipulative, and environmental limitations).

The record in this case reflects that the ALJ made specific findings regarding Plaintiff's age, education, past relevant work, and RFC.  (Tr. 25).  The ALJ concluded that, because "[Plaintiff's] ability to perform all or substantially all of the requirements of light work is impeded by additional exertional and/or non-exertional limitations," (tr. 25), it was inappropriate to rely solely on the Guidelines to determine whether she was disabled.  He, therefore, enlisted the aid of an impartial vocational expert to determine whether there are a significant number of jobs in the economy that Plaintiff can perform.  Under these circumstances, the Court concludes that the ALJ did not err in failing to conclude that she was disabled under the Guidelines.

As noted above, Plaintiff raises several other arguments in her motion for summary judgment.[3]   First, she takes issue with the ALJ's credibility and RFC determinations. Second, she contends that "[w]hen her physical limitations and pain are coupled with her severe depression, anxiety and nervous conditions, it is inconceivable that there are any jobs that she could do ...."  Finally, Plaintiff raises what is commonly referred to in disability proceedings as the "treating physician rule."   As this is the extent of Plaintiff's arguments, the Court will address them in summary fashion.

After reviewing Plaintiff's testimony, the ALJ determined that her credibility was "only fair at best."  (Tr. 22).  He offered the following explanation for his finding:

> The claimant's testimony regarding her impairments and limitations was extremely vague.  Although she alleges disabling pain, she admitted that she is able to do housework, vacuum, shop, do laundry, go to yard sales, visit her mother, read, and watch television.  These activities are inconsistent with the alleged severity of the claimant's symptoms.  Furthermore, although she alleges disabling psychological symptoms, she has not undergone ongoing treatment and did not begin attending therapy sessions regularly until she was recently diagnosed with bereavement after the death of her son.

(Tr. 22).  In reaching this conclusion, the ALJ considered the factors outlined in Social Security Ruling 96-7p.  He also followed the governing standards in determining that Plaintiff has underlying impairments that are established by objective medical evidence and may reasonably result in the symptoms she alleged, but declining to accept that her impairments result in the degree of limitation she alleged.  (Tr. 21).  *See* 20 C.F.R. § 416.929; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986).  Under these circumstances, the Court concludes that the ALJ's determination regarding Plaintiff's

---

[3]These arguments are not clearly designated "alleged errors," therefore, the Commissioner did not address them.  The Court, however, has an obligation to do so.

credibility is supported by substantial evidence, and will not be disturbed on appeal.  *See Jones v. Comm'r of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003) (explaining that an ALJ's determination of a claimant's credibility are accorded great weight and deference particularly since the ALJ has the opportunity of observing a witness's demeanor while testifying).

Plaintiff also contends that the combination of her physical and mental impairments precludes her from performing any type of work.  Despite this general allegation, the ALJ considered the combination of Plaintiff's impairments, including those deemed non-severe, in determining that they do not meet or equal a listed impairment.  (Tr. 21).  The Court finds no error in this regard.

Finally, Plaintiff argues what is known in disability parlance as the "treating physician rule."   Under that rule, opinions of physicians who have treated the claimant receive controlling weight if they are: (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with the other substantial evidence in the case record.  20 C.F.R. §404.1527(d)(2).  If the ALJ concludes that either of these criteria are not satisfied, he is required to apply the following factors in determining how much weight to give a treating physician's opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source...."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If an ALJ elects not to give controlling weight to a treating physician's opinion, the regulations also require him to provide "good reasons" for her decision.  *Id.   See* 20 C.F.R. § 404.1527(d)(2).  That requirement is not dispensed with

9

even where a reviewing court finds that the ALJ's decision, as a whole, is supported by substantial evidence. *Id.*

In this case, Plaintiff impliedly argues that the ALJ erred in failing to give controlling weight to the opinions of her treating physicians. More particularly, she argues that "Dr. [Sarah] Belhausen [sic] and Dr. [Robert] Brandon ... have had the benefit of treating, diagnosing and testing [her] for a number of years. Naturally, these physicians and psychiatrists are in a better position to evaluate and assess [her] ability to do and perform work-related activities." (Doc. #4). Both physicians completed functional capacity assessments, which the ALJ discussed - at length - in his written decision. (Tr. 22-23). The ALJ concluded, however, that the opinions of Drs. Brandon and Belhasen were entitled to little weight because "they are not supported or adequately explained." (Tr. 22). Moreover, the ALJ noted that Plaintiff's own report of her activities of daily living, and the unimpressive medical findings were inconsistent with the opinions. (Tr. 23). Finally, the ALJ explained that the limitations assessed by Dr. Belhasen were inconsistent with her opinion that Plaintiff requires only occasional pain medication. (Tr. 23). In doing so, the ALJ complied with the framework described above. Accordingly, the Court finds no error.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #4) is hereby **DENIED.**

10

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #5) is hereby **GRANTED.**

A Judgment in favor of Defendant will be entered contemporaneously herewith.

Dated this 20th day of June, 2006.



Signed By:

*David L. Bunning*

**United States District Judge**

G:\DATA\SocialSecurity\MOOs\7-05-144-MinixMOO.wpd